Mannen, &c., v. Bradberry.

CASE 26—EQUITY—MAY 12, 1883.

# Mannen, &c., v. Bradberry.

APPEAL FROM MASON CIRCUIT COURT.

1. The allegation of fraud is unsupported by proof.
2. ‘Appellant was not a creditor at the time of, or pre-existent to; the purchase of the land.
3. When an express promise comes within the statute of frauds, or a trust which the law would enforce was undertaken, and the statute which cuts off resulting trusts prevents a recovery of the subject purchased with the trust funds, the law will raise a promise to return the consideration of the contract or trust which the party under-taking to perform has received.

WHITAKER & ROBERTSON AND WM. LINDSAY FOR APPELLANTS.

1. The petition fails to aver that appellee had obtained a judgment and execution and return of *nulla bona*.
2. There is a complete failure to show any fraud whatever.
3. The cases cited by appellees are not in point.
4. The *dictum* of Judge Williams in Martin v. Martin, 5 Bush, 41, does not support the judgment appealed from.
5. The petition does not show a cause of action.

BARBOUR & COCHRAN FOR APPELLEE.

1. A purchase by a debtor in the name of another is fraudulent as to the existing liabilities of the debtor. (Secs. 19 and 20, ch. 63, Gen. Stat.; 3 Mon., 157; 1 Dana, 531; Baker v. Dobyns, 4 Dana, 220; 1 Duv., 242; Bump on Fraud, 237; 2 Bush, 415.)

2. It is not necessary that a creditor should have a judgment and return of *nulla bona* in order that he may attack a conveyance or a purchase in another's name. (1 Barb. Dig., 730; 4 Litt., 202.)

3. If one conveys land to another, and a third person pays the consideration, no use or trust results, but a personal claim arises in favor of the payer against the party to whom the land is conveyed. (Gen. Stat., ch. 63, sec. 19; 3 Bush, 98; 5 *Ib.*, 47.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

In 1865 Bradberry bought a tract of land from David Mannen for the price of $8,138.

James E. Pepper was the father-in-law of appellant, David Mannen, and the father of the appellant, Comfort Ann Mannen.

He purchased a tract of 193 acres of land from Winter on the 1st of March, 1866, for which he paid him $8,701, and put David Mannen and wife in possession of 143 acres, 2 roods, and 18 poles of it, agreeing that so long as David Mannen paid the taxes no rent would be charged.

At or about the time of the purchase from Winter, David Mannen was largely indebted to Pepper on account of money paid for him as surety, and Pepper was still bound for a considerable sum as his surety.

For the purpose of reimbursing him, and to indemnify him on account of suretyship, David Mannen delivered to Pepper one of the notes executed by Bradberry, amounting to about $4,000.

Pepper collected the note from Bradberry, and used it in paying Winter for the land which was conveyed to him on the 1st of March, 1866, as stated.

In the fall of 1866 Bradberry became the surety for David Mannen, and was subsequently compelled to pay as such for him $656.37 and $168 at different periods.

David Mannen and his family lived on the land until Pepper's death, which occurred in 1875.

After Pepper died, in September, 1875, his heirs, "in consideration of good and sufficient reasons . . . and $1," conveyed the 143 acres, 2 roods, and 18 poles to the appellant, Comfort Ann Mannen.

In 1878 Bradberry brought this action to recover the money paid for David Mannen as his surety, and to set aside that deed on the ground of fraud, and because, as is alleged, that David Mannen delivered the note of Bradberry to Pepper, who used it in paying Winter for the land to the extent of the value of the 143 acres, 2 roods, and 18 poles, and who "thereupon became liable to the said David Mannen for the amount so paid, as so much paid to Pepper's use." It is further alleged that "the liability of Pepper to Mannen, after its creation, could be subjected in equity to the payment of said Mannen's debts, if he had any during its existence."

We will first consider the question of fraud.

The evidence fully sustains the fact that David Mannen was indebted to Pepper, and Pepper was his surety for at least as much as the amount of Bradberry's note, which David Mannen delivered to Pepper, and that at that time David Mannen was insolvent and has ever since so remained.

It appears that Pepper omitted all reference in his will to the land he had put David Mannen and wife in possession of, because he did not wish to make a difference between his children in the disposition of his estate, and desired them to decide whether they would make the inequality by donating their descendible interest in the land to their sister, Mrs. Mannen, whose husband seemed to be improvident or an unfortunate manager of his business and financial affairs.

The children, after the death of their father, through sympathy and affection, did execute the deed which is assailed as fraudulent in this action.

No actual fraud has been proven, the whole of the evidence showing the state of facts recited, and that a sympathetic father-in-law paid his son-in-law's debts, and released him, by his will, from the payment of $2,000 which he owed him, and as a substitute therefor he used the Bradberry land note to buy land, on which he placed his son-in-law, to afford a shelter for his daughter and grandchildren. Knowing that he had really paid for the land himself, and that David Mannen had received as much as his other children, he determined not to convey the land to him or his wife, and left that to those who would inherit it with her for the reasons stated.

There is nothing unreasonable or inequitable in the conduct of Pepper.   It is nothing more than many a father-in-law has been compelled to do to protect his daughter and her children from want, and to insure them a participation in their rightful portion of his estate.

Besides this state of facts, it appears that the appellant was not a creditor at the time, or pre-existent to the purchase of the land from Winter, and the payment therefor.

And that he knew, for many years before the institution of this action, the manner Pepper paid Winter for the land, and of the declarations of both Mannen and Pepper as to the extent of the use of Mannen's money collected from Bradberry himself in paying Winter.

The charge of fraud is unsupported by the proof.

Second.  Does the law imply a promise by Pepper to pay to David Mannen the money collected of Bradberry, and used in payment for the land bought of Winter?

It is not alleged or proven that Pepper agreed to so use the money for Mannen's benefit, nor is it shown that Mannen's money, without consideration therefor, or without his

consent, was used to pay for the land, and the deed executed to Pepper.

We have examined the authorities on this point, and find that they are universally to the effect, that where an express promise came within the statute of frauds, and could not be enforced simply because the statute stood in the way, or a trust which the law would enforce was undertaken, and the statute which cuts off resulting trusts prevented a recovery of the subject purchased with the trust funds, the law will raise a promise to pay or return the consideration of the contract or trust which the party undertaking to perform has received, but refuses to return, and protects himself from an enforced execution of his contract or performance of the trust by plea of the statute of frauds and perjuries in the first, and of the statute against resulting trusts in the second instance.

This is the doctrine applicable to the facts of the cases of Montague v. Garnett, 3 Bush, 298, and Martin v. Martin, &c., 5 Bush, 56, and anything beyond this doctrine in either was *dictum*, and is not authority. Those cases, closely analyzed, go no further than the principle here stated.

If David Mannen had absolutely given the note of Bradberry to Pepper, and the latter had paid for the land with it and taken the deed to himself with the consent of Mannen, this would not have been a trust, but a pure gift, and being executed, unless fraudulent as to creditors, it could not be revoked by them or even the donor. The note on Bradberry was not given, however, to Pepper. He rendered a commensurate consideration for it to Mannen, who consented to its use as well as the making of the deed to Pepper, who would have had the right to the deed whether Mannen consented or not, because he really paid for the land.

Wherefore the judgment is reversed, and cause remanded with directions to dismiss the action.